UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-04191-AB (JEMx) | Date: | June 21, 2022 |
|---|---|---|---|

| Title: | *Hui Wang v. BXMEX Limited* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   [In Chambers] ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiff Hui Wang's ("Plaintiff") *Ex Parte* Application for Entry of Temporary Restraining Order ("Application"), (Dkt. No. 7), in which Plaintiff seeks to have "the cryptocurrenecy wallets identified in the Complaint and this [Application]" frozen. (Application at 5). Plaintiff alleges that Defendant BXMEX Limited ("Defendant") used the BXMEX website and app, both of which are now shut down, to defraud Plaintiff. (*Id.*). For the reasons stated below, the Court now **DENIES** Plaintiff's Application.

**I.   BACKGROUND**

Plaintiff alleges that Defendant is a "centralized cryptocurrency exchange" that is "controlled by a group of Chinese citizens hiding in foreign countries." (*Id.* at 6). Plaintiff also alleges that a Chinese citizen named Yixin Liu has significant control over Defendant.

Plaintiff alleges that in early March of 2022, a person claiming to be named "Lin Feng" contacted her through LinkedIn and then through a messaging application known as WeChat. (*Id.*). Feng claimed to be a cryptocurrency investor who had the ability to make significant sums of money in short periods of time by trading cryptocurrency. (*Id.*).

After making such representations, Feng persuaded Plaintiff to purchase $20,000 worth of USDC, a type of cryptocurrency, on crypto.com, and then to transfer that entire sum into a BXMEX account. (*Id.* at 7). Over the next few hours, Plaintiff's BXMEX account appeared to indicate that Plaintiff's $20,000 had made a profit of $3,000. (*See id.*). Due to the apparent success of this investment, Plaintiff decided to invest additional funds, totaling $683,000 "from her own savings . . . and various loans [including from family members]." (*Id.*). Plaintiff alleges she made these decisions "under the influence and decit of BXMEX's agent[,] Lin Feng." (*Id.*).

Next, Plaintiff alleges that all of the money she invested was "converted, without her consent, by BXMEX, into USDT, which is another cryptocurrency, [and] then channeled into various BXMEX wallets located in foreign countries." (*Id.*). These funds were then "frequently transferred to foreign exchange platforms outside the reach of U.S. laws." (*Id.* at 9). Near the end of March 2022, Plaintiff attempted to withdraw funds from her BXMEX account but was told that she would have to pay taxes in order to do so. (*Id.*). Plaintiff alleges that she then contacted various authorities to report she had been scammed. (*Id.* at 14).

On the basis of the above allegations, Plaintiff filed a Complaint against Defendant ("Compl."), (Dkt. No. 1), including three causes of action: (i) fraudulent misrepresentation, (ii) negligent misrepresentation, and (iii) violation of Securities and Exchange Commission Rule 10b-5, (Compl. at 11–14). Plaintiff now asks the Court to "immediately freeze all the cryptocurrencies located in the 38 wallet addresses mentioned" in her Application and her Complaint. (*Id.* at 14).

## II. LEGAL STANDARD

A temporary restraining order ("TRO") is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until either a preliminary injunction hearind may be held or a final judgment on the merits can be rendered. *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (citing *U.S. Philips*

*Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)); *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City.*, 415 U.S. 423, 439 (1974)).

The standard for a TRO is identical to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). Specifically, a party seeking preliminary injunctive relief must establish (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *Jones v. Bonta*, 34 F.4th 704, 713 (9th Cir. 2022) (citing *Winter*, 555 U.S. at 20)).

The Ninth Circuit "employs a 'sliding scale test,' which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success," such that an applicant "need only show 'serious questions' on the merits," so long as she establishes "that the balance of harships tips sharply in [her] favor, there is a likelihood of irreparable injury, and the injunction is in the public interest." *Where Do We Go Berkeley v. California Department of Transportation*, 32 F.4th 852, 859 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

### III.   DISCUSSION

Plaintiff's Application must be denied because Plaintiff has not demonstrated even a fair chance of success on the merits, with respect to the three causes of action in her Complaint.

Plaintiff's first two causes of action, for fraudulent misrepresentation and negligent misrepresentation, both involve justifiable reliance as an element. (Application at 14–15). However, Plaintiff's Application does not include any argument concerning this point. Rather, Plaintiff merely asserts that she justifiably relied on Lin Feng's misrepresentations. (*Id.* at 15–16).

Both the Application and the Complaint allege that Plaintiff began by investing $20,000 and only deposited greater sums of money after seeing her initial investment produce (or appear to produce) a profit of $3,000. (*Id.* at 17; Compl., ¶

53). However, she provides no argumentation or case law supporting the idea that it was justifiable for her to make even the initial deposit, given her relative lack of knowledge concerning Lin Feng and BXMEX. According to Plaintiff's allegations, her knowledge of and communications with Lin Feng were limited to messages on LinkedIn and WeChat. Since Plaintiff has not shown she has a fair chance of establishing justifiable reliance, she has not shown she has a fair chance of success on the merits with respect to her first two causes of action.

Plaintiff's Application is similarly devoid of necessary support for her third cause of action, which alleges a violation of Securities and Exchange Commission Rule 10b-5. Rule 10b-5 prohibits the taking of certain actions "in connection with the purchase or sale of any security." (Application at 16). However, Plaintiff fails to establish that the Court should regard the cryptocurrencies in this case as securities for the purposes of Rule 10b-5.

Although Plaintiff makes no references to case law on this point, Plaintiff could have turned to *U.S. Securities and Exchange Commission v. Kik Interactive Inc.*, 492 F.Supp.3d 169 (S.D.N.Y. 2020), and its application of "the test set forth in [*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)]" to the cryptocurrency context. *Kik*, 492 F.Supp.3d at 177. The *Kik* court held that a sale of cryptocurrency constituted an "offering of securities" since "the definition of 'security' includes an 'investment contract'" and since the cryptocurrency in that case satisfied *Howey*'s three-element test for the existence of an investment contract. *Kik*, 492 F.Supp.3d at 177, 182.

Even so, *Kik* is not binding on this Court, and it includes some noticeably distinguishable facts. *Kik* involved *sales* of cryptocurrency, whereas this case involves promises of profitability relating to *deposits* of cryptocurrency. Moreover, another court in the Central District recently declined to recognize cryptocurrencies as investment contracts (and thereby as securities) in a case involving cryptocurrency. *See Securities and Exchange Commission v. Pacheco*, No. EDCV 19-958-MWF (AFMx), 2022 WL 1591711 (C.D. Cal. April 4, 2022).

Although the Court remains agnostic as to whether Plaintiff could establish a fair chance of success on the merits with respect to her third cause of action, it would be inappropriate for the Court to make such arguments on Plaintiff's behalf, let alone to evaluate these arguments on the assumption that Plaintiff would endorse them. For the foregoing reasons, Plaintiff's Application is **DENIED**.

**IT IS SO ORDERED**.